UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| CORPORATE EXPRESS OFFICE PRODUCTS INC. )<br>)<br>    Plaintiff )<br>)<br>)  Civil No. 06-106<br>v. )<br>)<br>JAMES C. GAMCHE AND )<br>BRIAN OLAS, )<br>)<br>    Defendants ) | |

*Recommended Decision on Motion for Temporary Restraining Order*

On June 28, 2007, oral argument was held on plaintiff's motion for temporary restraining order (Docket No. 4), filed in conjunction with plaintiff's motion for preliminary restraining order. In accordance with the plaintiff's request, this matter was scheduled for a non-testimonial hearing on the portion of the motion that seeks a temporary restraining order. The defendants were ordered to file an expedited written response to the motion and they have done so (Docket No. 16). Plaintiff clarified at the commencement of the hearing that it sought an immediate temporary restraining order limited to the following: (1) All three defendants be enjoined from using any confidential information or trade secrets that properly belong to Corporate Express Office Products, Inc.; (2) To the extent any of the defendants currently have confidential information or trade secrets belonging to Corporate Express Office Products, Inc., they should be ordered to immediately return the same; and (3) Defendants Gamache and Olas be restrained from calling upon, soliciting, servicing, and assisting directly or indirectly with any contact made with any customers of Corporate Express Office Products, Inc. with whom either defendant had

personal contact while he was employed at Corporate Express Office Products, Inc. Based upon the record currently before this court, I recommend the court **DENY** the request for a temporary restraining order and set this matter for an evidentiary hearing on the motion for preliminary injunction following the receipt of plaintiff's reply to the defendant's response (currently due on July 10, 2006, according to the electronic docket)[1].

*Background*

Corporate Express Office Products, Inc. (hereinafter Corporate Express) and W.B. Mason (hereinafter Mason) are direct competitors in the highly competitive business of marketing, selling, and distributing office supplies, office products, and office furniture. Commencing in March 2004 and continuing through to the date this action was filed, Corporate Express and Mason have engaged in no fewer than five prior lawsuits in conjunction with former Corporate Express employees who had signed non-compete agreements and then commenced employment with Mason. Each lawsuit involves allegations similar, although not identical, to the complaint filed with this court.[2] The Maine case's history goes back to at least 2001 when Mason bought Maine Office Plus in Portland, Maine, a local office supply company where James Gamache

---

[1] If the court follows this recommendation and denies a temporary restraining order, I suspect that the parties may want limited discovery prior to any evidentiary hearing. I base my surmise upon the parties' explanation of the litigation history between these parties. I also note that, according to defendants' counsel, one of the hearings on preliminary injunctive relief in another case lasted for ten days. Therefore, my recommendation would be that the court closely manage this case, establishing an interim scheduling order in anticipation of the preliminary injunction hearing and a pretrial conference to establish a schedule for the exchange of witness lists, exhibits, and so forth prior to the actual hearing. While the schedule need not be as lengthy as a full-blown scheduling order, I do not anticipate that a full evidentiary hearing on the preliminary injunction will be scheduled before sixty days from today's date. Of course, if both parties are prepared for an earlier full evidentiary hearing, they can let the court know their positions.

[2] A summary of the litigation history is found in the Gregg A. Rubenstein Affidavit (Docket No. 20). The cases include the following: (1) Corporate Express Office Products, Inc. v. Yesu, No. 3:04-CV-0466, District of Connecticut; Corporate Express Office Products, Inc. v. Eden, Docket No. C-62-04, New Jersey Superior Court; Corporate Express Office Products, Inc. v. Julianello, Civil Action No. 05-1456, Massachusetts Superior Court; W.B. Mason v. Corporate Express Office Products, Inc., Docket No. C-8-06, New Jersey Superior Court, Chancery Division; and Corporate Express Office Products, Inc. v. Turcotte, Docket No. C-80-06, New Jersey Superior Court, Chancery Division. My recommended decision in this case does not turn on the outcomes of these cases in any way as I have no reasonable way to compare the factual record developed in each of these cases with the record I have before me. Thus, whether these various judges did or did not grant any form of equitable relief is immaterial to my analysis.

worked. Shortly after Mason purchased the business Gamache left and went to work for Corporate Express, taking approximately 100 customers with him. In January 2006 Gamache left Corporate Express and went to work for Mason. On May 26, 2006 a second Corporate Express Maine employee, Brian Olas, also resigned and went to work for Mason. Both Gamache and Olas were sales representatives, Olas being a management level employee and overseeing a sales force of people located in Maine, New Hampshire, and Essex and Middlesex Counties in Massachusetts. Both Gamache and Olas had signed contracts with Corporate Express containing noncompete, nonsolicitation, and nondisclosure provisions.

Aside from these few basic facts that are undisputed, the parties have presented affidavit testimony that generates numerous factual and legal disputes. The primary factual dispute appears to center on the issue of whether Gamache and/or Olas ever had any knowledge that could be considered either a trade secret or the confidential proprietary knowledge of Corporate Express. Furthermore, there is a factual dispute about whether, if they did have such knowledge, dissemination or use of the knowledge by them in their new employment would cause any irreparable harm to Corporate Express. Finally, the affidavit testimony on file generates a factual dispute about whether office supply salespeople such as Gamache and Olas actually generate "goodwill" for their employers such that would justify the restrictive noncompete covenants contained within the contracts they signed.

### *Legal Standards Applicable to the Motion*

The primary purpose of a temporary restraining order, in most cases, is to maintain the status quo by preserving the movant's equitable rights pending a final disposition. Mank ex. rel. Hannaford Health Plan v. Green, 297 F. Supp. 2d 297, 304 (D. Me. 2003). In order for Corporate Express to obtain a temporary restraining order, I must find that the following criteria are met:

(1) that Corporate Express has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); (2) that Corporate Express will suffer irreparable injury if the injunction is not granted; (3) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendants. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop, 839 F. Supp. 68, 70 (D. Me. 1993).  I also measure "the effect (if any) of the court's ruling on the public interest." Ross-Simons of Warwick, Inc. , 102 F.3d at 15.   Following this familiar flowchart, "the main bearing wall" of the four-part test has been described as the movant's likelihood of success on the merits. Id. at 16.  See also Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir.1993) ("The sine qua non of [the four-factor] formulation is whether the plaintiffs are likely to succeed on the merits.").

    For purposes of this temporary restraining order (TRO), Corporate Express did not request an evidentiary hearing, but clearly recognized that given the nature of the case this court would never have entertained an ex parte motion for a TRO.  When a party seeks a nontestimonial TRO, after notice to the other side, the court is faced with a procedural vacuum under Rule 65 of the Federal Rules of Civil Procedure. See 11A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2949 (2d Ed. 1995).  Clearly affidavits are an acceptable form of evidence in such a proceeding, but when both sides submit affidavit evidence and the affidavits present a conflict which must be resolved, at least in part, by credibility determinations, and neither side has requested an evidentiary hearing, the issue becomes whether the evidence is sufficient to permit the party relying on it to prevail. Id.  If the court proceeds with a full testimonial hearing on the temporary restraining order, it becomes the functional equivalent of a hearing on a motion for a preliminary injunction.  Id.

I will begin my discussion with the "main-bearing wall," and then, as to defendants Olas and Gamache, proceed to consider the second prong of the analysis in determining whether Corporate Express is entitled to injunctive relief based upon the current state of the record.

**A. Likelihood of Success on the Merits**

Corporate Express has brought a nine-count complaint against three separate defendants and the causes of actions and the factual disputes differ as to each defendant and must be assessed separately. Corporate Express has sued Mason alleging a violation of Maine Uniform Trade Secrets Act, 10 M.R.S.A. § 1541, tortious interference with prospective business advantage, unfair competition, and tortious interference with Gamache's and Olas's employment contracts. It seeks a temporary restraining order against Mason barring it from using any of Corporate Express's trade secrets and confidential information and ordering it to return any such information it has in its possession. My review of Corporate Express's own affidavits does not reveal any <u>evidence</u> that Mason is in possession of any trade secrets or confidential information that belongs to Corporate Express nor does the evidence, at this juncture, establish that Mason has used any such information for its own benefit. The questions regarding whether Mason tortiously interfered with the contracts between Gamache and Olas and Corporate Express are not answered by these pleadings even to the level of a "substantial possibility" of ultimate success on merits. Nor does this evidence begin to demonstrate that Mason has violated a statutory duty regarding <u>unfair</u> competition. I am simply not persuaded that this court can sort out the merits of the longstanding dispute between Corporate Express and Mason based upon a series of self-serving and conclusory affidavits of the "did so-did not" nature filed by both sides at this stage of the proceeding. As to the issuance of a temporary restraining order against Mason, my analysis goes no further than the first prong of the test.

The parties appear in agreement that the question of whether the noncompete, nonsolicitation, nondisclosure agreements are enforceable is to be determined by reference to Maine law. Pursuant to Maine law "the reasonableness of a noncompetition covenant is a question of law that must be determined by the facts developed in each case as to its duration, geographic area, and the interests sought to be protected." Brignull v. Albert, 666 A.2d 82, 84 (Me. 1995) (citing Chapman & Drake v. Harrington, 545 A.2d 645, 647 (Me. 1988)). The Brignull court also noted that protecting an employer from business competition is not a legitimate business interest to be advanced by such an agreement, but that preventing an employee from taking existing customers and protecting goodwill of a business were legitimate interests. Id. at 84.

Applying those principles to the contracts signed by Gamache and Olas, I conclude that Corporate Express has shown at least a substantial possibility of success on the merits at least as to the enforceability of certain provisions of the contracts. At oral argument counsel for Corporate Express suggested that the court had the ability to interpret the contract to excise those portions that might be overbroad and unenforceable in its view, leaving a nondisclosure agreement and nonsolicitation/noncompete agreement in place that would bar the disclosure of actual trade secrets and confidential information and would also leave in place a nonsolicitation/noncompete agreement for one year's duration limited to the geographic territory of each salesperson and to the actual customers of Corporate Express at the time of their Corporate Express employment. Indeed the very language of the contract supports that contention, indicating that its provisions are severable and are to be enforced to the full extent authorized by law. (Docket No.1, Ex. 7 at 2 ¶ 2.) There may be factual disputes surrounding the reasonableness of even these terms as applied to the circumstances of Gamache and Olas.

However, in their own affidavits Gamache and Olas appear to recognize that they have a contractual obligation to Corporate Express and they aver that they have voluntarily undertaken to abide by those contracts to the extent set forth in their separate affidavits. Their efforts to minimize the "goodwill" portion of their services appear hollow to me, as obviously each of the men established a modicum of "goodwill" on behalf of Corporate Express with certain customers -- that is what a salesman does after all. Furthermore, the type of information the men may have had access to regarding certain accounts, such as customer preferences, pricing information unique to certain customers, buying patterns and so forth, would be considered confidential information within a company such as Corporate Express and the company could reasonably want its ex-employees not to share that information with a competitor. In sum, before I recommend the denial of this motion for temporary restraining order as to Gamache and Olas, I have also considered the second prong of the four prong inquiry.

**B. Irreparable Injury**

Judge Carter considered the availability of injunctive relief in a case remarkably similar to this one in a fairly recent case, Rencor Controls, Inc. v. Stinson, 230 F.Supp.2d 99 (D. Me. 2002). In that action the plaintiff sought to enjoin two former sales employees from competing against it on the theory that they had misappropriated trade secrets. Id. at 101. As in this case the alleged "trade secrets" related to "customer pricing, sales, product inventory, distribution and delivery information." Id. at 100. The Rencor Controls, Inc. evidence of actual malfeasance was stronger than in this case because the evidence established that the two former employees had actually downloaded and took with them when they left employment copies of a proprietary software program and the plaintiff had lost specific identified customers as a result of the conduct. Id. at 100-01. The software program had been returned by the time of the hearing on

the motion, and the Court determined that there was no evidence of irreparable harm in the record because money damages could make the plaintiff whole. Id. at 103 -04.

In my opinion the harm that Corporate Express has identified for purposes of this temporary restraining order falls within the same category. Essentially Corporate Express speculates that it <u>might</u> lose the business of certain identifiable customers if Gamache and Olas approach those customers either directly or indirectly on behalf of Mason. If Corporate Express loses those accounts, the lost profits are clearly quantifiable and can be awarded as damages. It is even provable whether the accounts were lost because of Mason or because of some other reason, because obviously if neither of these companies has the office product business either the customer went to a third party for some reason unrelated to Gamache or Olas or the customer no longer purchased the product from anyone. I fail to see how the damages of lost profits from customers in this context are anything other than quantifiable.

An important distinction exists in this case that makes it different from <u>Rencor Controls, Inc.</u> In that case there was no contractual noncompete agreement between the employees and the employer. Arguably Corporate Express has a more intangible interest in the enforcement of the contract provisions and it is being denied the benefit of its bargain because the one-year temporal limit is being used up with Gamache and Olas potentially having gained the benefit of the bargain without conforming their conduct to the enforceable provisions of the contract. However, there are two problems with casting this injury as irreparable in light of these circumstances.

Both Gamache and Olas aver that they have not shared any confidential information with Mason. Olas avers he has no contact with existing Corporate Express customers, while Gamache avers that his only contact is with existing Corporate Express customers that were prior

customers of his when he previously worked for Mason. Thus, whether there has been any violation of the provisions most likely to be deemed enforceable remains a very open question. Corporate Express has not presented any evidence to the contrary. Accordingly, it is extremely hard to determine that Corporate Express will somehow suffer irreparable injury if the court does not issue a temporary restraining order today barring Gamache and Olas from doing what they aver they are not doing anyway. Furthermore, if ultimately -- after developing a full factual record -- the court does determine that there is contract enforceable for one year and that either Gamache or Olas has violated it, the contract itself provides the one-year period is tolled during this litigation, thereby ultimately allowing Corporate Express to achieve the "benefit" of limiting Gamache and Olas for a full one-year period from the date of the court finding. (See Ex. F). I would have to make an evidentiary finding that there is a substantial possibility that a violation of a fully enforceable provision of the contract occurred before granting a temporary restraining order, something I am not prepared to do on the current disputed record. Based on these considerations, I do not find that Corporate Express is currently suffering irreparable injury.

## Conclusion

Based upon the foregoing, I recommend the court deny so much of the motion as seeks a temporary restraining order and schedule the motion for preliminary injunction for an evidentiary hearing following a scheduling conference with the magistrate judge.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.


                                        /s/ Margaret J. Kravchuk
                                        U.S. Magistrate Judge

Dated June 29, 2006.